# Keppel *against* Jackson.

In an issue directed by the court between judgment and mechanics' lien creditors, under the Act of 16th June 1836, it is the province of the jury to ascertain and determine by their verdict, what part of the ground is necessary for the convenient use of the building for the purposes for which it was intended, and to which the lien of the mechanic is to extend.

ERROR to the Common Pleas of *Berks* county.

Samuel S. Jackson against Jacob Keppel. This was a feigned issue under the Act of Assembly providing for the distribution of the proceeds arising on sale of real estate of the defendant in execution.

The facts, as far as they were undisputed, were these: William F. Murphy obtained a judgment against Milo H. Ferry, on the 20th of January 1840, for $341.76, on which a *fieri facias* was issued, and the real estate of defendant levied on and condemned, as follows:—A messuage and a half lot of ground, on the south side of Penn street, in Reading, containing in front 30 feet, in depth 270 feet. Also one and a half lots of ground adjoining the above on the east, containing in front 90 feet, and in depth 270 feet, on which is erected a steam saw-mill, taken in execution as the property of Milo H. Ferry, &c.

A *pluries venditioni exponas* was issued to August term 1841, and the property offered for sale by the sheriff, as one property, and bid up to $1890—and then offered in two pieces or lots, one of 60 feet, and the other of 30 feet, and the amount bid on them was $1900, viz. $1400 for the 60 feet lot on which the building of steam saw-mill stands, and the eastern, 30 feet, was bid to $500, at which sums both were struck off to Samuel S. Jackson.

The money being paid or considered in court, the court, upon application, appointed a commissioner to distribute the proceeds among the claimants, who made report and distributed the amount,

after deducting $32.50 costs, among the holders of certain mechanic's liens, in exclusion of the judgment creditors. To this report the judgment creditors filed exceptions, so far as the proceeds of $500 were concerned, viz. for the 30 feet on the eastern part of said lot. And on the argument of the exceptions, claimed an issue, which the court granted, and was as follows:

" November 13, 1841, the court, upon the application of the above-named plaintiff, direct an issue in which Samuel S. Jackson is plaintiff and Jacob Keppel defendant, to ascertain whether Samuel S. Jackson is entitled to any part of the money arising out of the sale of the real estate of Milo H. Ferry. If Samuel S. Jackson is entitled to any part, the jury to ascertain the sum, and find the sum by their verdict. If he is entitled to no part, the jury are to find for the defendant. The issue to be tried under the plea of *non assumpsit* and issue, and without declaration. Each party to be at liberty to sue out a writ of error."

The plaintiff gave in evidence the judgment and proceedings of William F. Murphy *v.* Milo H. Ferry, above stated.

Also two judgments, viz: one entered on the 23d of October 1839, to August term 1839, No. 115, in the name of George R. Frill, against Milo H. Ferry, on a judgment bond dated —— day of —— 1839. Penalty of $2000; conditioned for $1000. This judgment was assigned to Samuel S. Jackson on the 20th of June 1840; the other entered on the same day as August term 1839, No. 114, in the name of George R. Frill, for the same amount.

The defendant gave in evidence a number of liens entered by mechanics and material men.

The jury then went upon the ground to view the premises. And the defendant called George R. Frill to prove that the lot was originally laid off at 90 feet, to answer the purpose of erecting and carrying on the steam saw-mill, and that the contracts were made with the mechanics and material men in reference to the 90 feet. To his admission the plaintiff objected, on the ground of interest, as the witness was charged in the liens of Keim & Miller, Marks Scull, and James May Jones & Co., as a partner of Milo H. Ferry, and was in partnership with Ferry when the mill was first built. The court sustained the objection, and rejected the witness. To which decision the defendant excepted.

The defendant then called several witnesses, who testified respecting the half lot of 30 feet, and the necessity for it, for the full enjoyment of the mill.

The defendant asked the court to charge the jury, that if the owner of the property laid off the 90 feet as necessary for the mill, and made the contracts with the mechanics and material men to bestow their labour and materials, the plaintiff was not entitled to recover.

In answer to which the court thus charged the jury :

BANKS, President.—You have heard all the evidence, and have viewed the ground and buildings, and are no doubt well prepared to decide the case. Was the half lot necessary for the convenient use of the building for the purposes for which it was intended ? If so, you will find for the defendant. If part of it was thus necessary, you will determine what that part is, and the proportion of the price for which this half lot was sold, which should be appropriated to the mechanics' liens. In determining this question, you will consider the manner in which it had been used by the owners of the lots and building. What they said about it; what others have testified in relation to it; and also your own observations made when on the ground, may tend to aid you in the determination of this question. The case is left for your decision.

Errors assigned :

1. The court erred in the rejection of George R. Frill.

2. In their charge to the jury, by referring the matter to the decision of the jury, whether it was convenient for the use of the steam mill to include the whole lot. They should have charged the jury as requested by the defendant.

*Hoffman* and *Filbert*, for plaintiff in error, cited 1 *Rawle* 155; 4 *Watts* 223; 2 *Whart.* 118.

*Strong* and *Smith*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—This was a feigned issue, to try whether the lien of several mechanics, who had built a steam-mill in Reading, covered only the lot on part of which the building was erected, or whether it extended to half of an adjoining lot. Between the building and this half lot was a space of 12 feet, not covered by any building.

The first question was as to the admission of George R. Frill as a witness for the mechanics. At the time the building was begun, and until nearly completed, Frill was a part owner of the lot and building, and the mechanic's liens were filed against George Frill and Milo H. Ferry. Frill sold out his interest to Ferry ; but as he was liable for all debts contracted while he was a partner, he was objected to, because, if the half lot was held bound, its price, viz. $500, went to discharge so much of the mechanic's liens, and, of course, to discharge Frill of so much. The adverse claimant was a judgment creditor of Ferry, on a judgment obtained after Frill had ceased to be a partner. On the witness being rejected by the court, some of the mechanics released him; but others, whose claim exceeded $1000, refused to release him; and he was again rejected. Clearly, he was interested, and rightly rejected. This alleged error was not pressed here.

The next error assigned was to the charge of the court. The Act of 16th June 1836, relating to mechanics' liens, provides, in section 2d, as follows: "The lien of such debt shall extend to the ground covered by such building, and so much other ground immediately adjacent thereto, and belonging in like manner to the owner of such building, as may be necessary for the ordinary and useful purposes of such building: the quantity and boundaries whereof shall be determined as follows:

Section 4. The owner may define in writing, and cause to be entered in a book, to be kept by the prothonotary, the boundaries: and this is obligatory on all persons.

Section 5. In default of such designation, the court, on petition by those interested, may appoint competent and skilful persons as commissioners to designate the boundaries."

In the succeeding sections, minute directions as to the appointment and duties of such commissioners, and their powers, are given.

Section 9 provides, that if commissioners have not been appointed, and the boundary in no way designated, and the property is sold on execution, the court, preparatory to the apportionment of the proceeds, may appoint an auditor, or on the application of any of the parties, may direct an issue.

In this case, the previous designation of boundaries was not made in any of the modes prescribed by the Act, and an issue was directed. The court, after stating distinctly all the facts and evidence, say, "It is admitted the lien covers the entire lot of 60 feet, on which the building is erected. The contest is as to the contiguous half lot. The mechanics claim it all; the creditors, by judgments, claim it all. You have heard all the evidence, and have viewed the ground. Was the half lot necessary for the convenient use of the building for the purposes for which it was erected? If so, you will find for defendant. If part of it was thus necessary, you will determine what that part is; and the proportion of the price for which this half lot was sold, which should be appropriated to the mechanics' liens."

To understand this last sentence, it must be mentioned that the levy was on a steam saw-mill, and 90 feet front. After several sales, set aside for different reasons, the last sale was of a steam mill, and 60 feet front, and a half lot, 30 feet front; and this half lot sold for $500, and the mill $1400 — being more than the property had brought in any other mode of selling. There was no objection to the mode of selling in two parcels, either in the court below or here. It is probable it was by an order of the court, or consent of the parties.

The objection to the above opinion of the court cannot be sustained. The charge was agreeable to the words and spirit of the law; and, in fact, in the words of one of the sections; and the judge substituting "necessary and convenient use," for the words

[Keppel v. Jackson.]

"necessary for the ordinary and useful purpose of the building," scarcely varied from the law; if there is any variation, it was in favour of the extent of the lien to the half lot.

The argument here, as is too often the case, was rather against the finding of the jury, than the charge of the court. It would save time and trouble, if all gentlemen of the bar would recollect that we cannot reverse on account of the finding of a jury; a motion for new trial in the court which tries the cause, is the only redress for that.

Judgment affirmed.